Peter ROSENBRUCH, Plaintiff,

v.

AMERICAN EXPORT ISBRANDTSEN
LINES, INC., Defendant.

No. 71 Civ. 5662.

United States District Court,
S. D. New York.

March 15, 1973.

Richard T. Graham, P. C. by Seymour Simon, New York City, for plaintiff.

Haight, Gardner, Poor & Havens by M. E. DeOrchis, New York City, for defendant.

OPINION

TYLER, District Judge.

This is a suit in admiralty to recover $102,917.08 for cargo admittedly lost in trans-Atlantic transit. The facts are not in dispute, and the parties have cross-moved for partial summary judgment on the issue of limitation of liability, posing another variant of the package limitation issue considered recently by the courts of this circuit in, among others, the cases of Leather's Best, Inc. v. S.S. MORMACLYNX, 451 F.2d 800 (1971), and Royal Typewriter Co., Division of Litton Business Systems, Inc. v. M/V KULMERLAND, 346 F.Supp. 1019 (S.D.N.Y.1972).

## THE FACTS

Desiring to transport his household goods from New York to Hamburg, plaintiff-shipper contracted with the Seven Santini Bros., Inc. ("Santini"), a firm of international movers, which in turn arranged for carriage on Voyage 42 of the SS CONTAINER FORWARDER, a ship designed only for container carriage, and used by its owners and operators, defendant American Export Isbrandtsen Lines, Inc. ("Export"), for New York-Northern Europe crossings.

Santini requested and was furnished without charge a container, No. 18333, measuring the standard 40' x 8' x 8', by Container Marine Lines, a division of Export. Overland movement of No. 18333 was at shipper's expense. Santini loaded and sealed the container and delivered it to Export in New York City. A bill of lading dated January 8, 1971 was made out, with Rosenbruch as the consignee.

The bill of lading indicated under the column entitled "No. of Cont. or Other Pkgs." the number 1, and the words "shipper's load and count" were stamped in block letters under the typed-in description of the goods to be transported. Also on the bill, written in by Santini, was the proviso "stow under deck only". This the carrier subsequently crossed through, apparently indicating that it was to be disregarded.[A]

No. 18333 was in fact stowed, not under deck, but on a weather deck, and it, along with 31 other containers similarly stowed, was lost when the SS CONTAINER FORWARDER encountered heavy seas en route to Hamburg.

On these facts plaintiff seeks to recover $102,917.08, the asserted value of the cargo shipped. Defendant, while not admitting liability, claims that container No. 18333 qualifies as a "package" under § 4(5) of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.A. § 1304(5), which by its express terms would limit any recovery in this case to $500. Summary judgment, more in the nature of declaratory relief at this point in the proceedings, is prayed by both parties as to the applicability of § 4(5).

### I

Section 4(5) of COGSA is a theoretically straightforward provision, designed to prevent carriers, presumed to have the superior bargaining position, from contracting altogether out of liability for cargo loss or damage. A lower limit in this regard of $500 per "package" is imposed.[1]

But § 4(5) was enacted in 1936, well before the advent of container shipping, when $500 at least approximated the value of the average parcel shipped. Today, as a result of the widespread movement by the world's merchant marine to "containerization", large numbers of parcels are placed in a single container, a metal box normally measuring 40' x 8' x 8', before being loaded on board ship.[2]

The inevitable question, whether a container is a package for § 4(5) purposes, was considered most recently by the Court of Appeals for the Second Circuit in Leather's Best, Inc. v. SS MORMACLYNX, 451 F.2d 800 (1971), where it was determined that it was not. The container there was delivered to the

---

A. After this opinion was filed, it was pointed out that the bill of lading described above was in fact the carriers' office copy. The original has been submitted, varying from the above description in that the phrase "stow under deck only" is entirely blacked out and completely illegible. A copy of both the original and the office copy are appended to this opinion. See Appendix A.

1. 46 U.S.C. § 1304(5) (1936) provides: "(5) Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading."

2. See e. g. Affidavit of Seymour Simon, Exhibits 2a, b and c.

shipper under the supervision of the carrier's agent, the truck driver.[3] The driver gave the shipper a receipt indicating the number of parcels loaded, and the bill of lading itself bore the typed-in notation "1 container s.t.c. 99 bales of leather." [4]

These facts, it was held, indicated the understanding of all concerned that the individual bales were the packages shipped, and that the container was essentially a device for the carrier's convenience in handling and stowage.[5] And, also found relevant, the carrier therein could not deny knowledge of both the nature of the cargo and number of packages employed to ship it.[6]

Less participation by the carrier or less knowledge on its part as to the contents of a container, the opinion noted, would present an entirely different case.[7] Chief Judge Friendly, writing for the court, expressly set out as possible material variations the shipper packing a container already on its premises and receiving for it a bill of lading reciting only 1 under the column left open for number of packages and cargo description.[8]

Just such variations, and others, were presented to this court, and, coincidentally, this writer, in Royal Typewriter Co., Division of Litton Business Systems, Inc. v. M/V KULMERLAND, 346 F.Supp. 1019 (S.D.N.Y.1972). The container lost there belonged to the shipper's agent, who had loaded and sealed it before delivering it to the carrier. The bill of lading given the shipper recited only "one container said to contain machinery," and the container itself was smaller than the typical ship's container,

as here, which, as was pointed out, rendered it susceptible to confusion with typical cargo crates.[9]

It was clear in *KULMERLAND* that the container was intended by the shipper to be the basic cargo unit, and equally clear that the carrier had not been put on notice as to the nature and value of the goods it was transporting.[10] The container, therefore, was held to be a "package" for § 4(5) purposes.

The case at bar, however, cannot fairly be said to fall under either of the extremes represented by *KULMERLAND* and *Leather's Best*. As in *KULMERLAND*, the shipper alone loaded the container; the bill of lading indicated only "1" under the entry "Number of Cont. and Other Pkgs.," and the cargo description was simply, "said to contain household goods." Reminiscent of *Leather's Best*, the container was of the more typical 40′ x 8′ x 8′ dimensions, owned by the carrier and furnished at the shipper's request.

This case, however, closely approximates the intentionally undecided hypothetical set out by Judge Friendly, varying only in that Santini did not own No. 18333, nor have it "already on its premises." [11]

■ Ownership or possession in and of itself, cannot be dispositive of this case. It, along with the entire record must be considered, and inferences drawn as to the knowledge of the shipper and carrier—and the mutual understanding of the parties.

To say this, however, brings the analysis around full circle, as the facts of this case do not realistically imply the outcome. Other factors must be consid-

---

3. 451 F.2d at 804. The court specifically determined the trucker to be the agent of the carrier, as the carrier had engaged him.

4. "s.t.c." corresponds to "said to contain".

5. 451 F.2d at 815–816.

6. 451 F.2d at 815. Note that loading of the container took place at the factory of the seller of the cargo. This would sub-

stantiate to the carrier, through its agent the trucker, the shipper's description of the merchandise.

7. 451 F.2d at 815.

8. *Id.*

9. 346 F.Supp. at 1024.

10. 346 F.Supp. at 1024–1025.

11. 451 F.2d at 815.

ered: specifically, uniformity of result and simplicity of application.

The issue can first be narrowed by pointing out that it is solely with a container holding the goods of a single shipper that this opinion is concerned.[12] Only in this circumstance can any question of the shipper's intent arise. Moreover, it is only where the shipper packs the container or requests the carrier to do so that it becomes necessary to consider whether or not there was a "single package" under § 4(5). The carrier cannot unilaterally limit its liability by taking bales delivered it by a shipper and, on its own initiative, containerize them.

Given these circumstances, however, predictability can obtain. Judge Hays in his dissent in Encyclopaedia Brittanica, Inc. v. Hong Kong Producer, 422 F. 2d 7, at 20 (2d Cir. 1969), would achieve this by deeming a container, where these conditions are met, a § 4(5) package.[13] I agree.

The choice between so applying § 4(5), or the alternative, to ignore the container and count the contents, is grounded on several considerations. The accident of notations on the bill of lading as to package count is too uncertain to govern. Problems of proof would inhere, and shippers inevitably would be tempted to minimize package size to increase potential compensation.

More important, however, is the question of insurance. Viewing the issue from the insurance vantage point, the choice is between requiring the carrier to increase its coverage and pass on the costs of same to all shippers, even those who prefer cheaper rates and higher risks, and granting the option to the shipper to obtain that coverage he requires. COGSA, while pre-dating containers, did not pre-date marine insurance. This choice was before the Congress, and, on examination of the terms of § 4(5), I conclude that the legislature opted for the second alternative.[14]

To summarize, the present record reveals that the selection of Voyage 42 and the SS CONTAINER FORWARDER was made by Santini as shipper's agent; and that Santini requested use of carrier's container, with the proviso that the container hold only shipper's goods. No showing has been made that the carrier was unduly involved in the preliminary operations, as it was in *Leather's Best*. It is ruled, therefore, that container No. 18333 is a package for the purposes of § 4(5) of COGSA, 46 U.S. C. § 1304(5). Defendant's motion for summary judgment on this point is granted, and, perforce, that of plaintiff is denied.

It is so ordered.

12. See 451 F.2d at 815, citing the dissenting opinion of Judge Hays in Encyclopaedia Brittanica, Inc. v. Hong Kong Producer, 422 F.2d 7 at 20 (2d Cir. 1969), cert. denied, 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970).

13. See also, *Leather's Best, supra*, 451 F.2d at 815.

14. See text of statutory provisions at fn. 1; see also, of course, paragraph 17 of the applicable bill of lading set forth in Appendix B hereto; see the similar language contained in the bill of lading pertinent in *Leather's Best, supra*, at 805–806.

# APPENDIX A

**AMERICAN EXPORT FREIGHT, INC. Agent**

For AMERICAN EXPORT ISBRANDTSEN LINES, INC., Carrier    26 BRE ... ... ... ... N. Y. 10004

CABLE ADDRESS: EXPOSHIP

| ORIGINATING CARRIER TO STEAMER | | PLACE OF ORIGIN | CAR NUMBER·REFERENCE |
|---|---|---|---|
| Santini Brothers Inc. | Ref. #1-68305 | | Job # 327477 |

| FORWARDING AGENT · REFERENCES · FMC NO | | EXPORT DEC. NO. |
|---|---|---|
| Sevon Brothers International     FMC#139 | | |

If Through Bill, indicate here → [ ]  Type word "Through"

**BILL OF LADING**
(THE SCOPE OF THE SEA VOYAGE IS DESCRIBED IN CLAUSE 3 HEREOF)

SHIPPER (NAME AND ADDRESS)
Santini Brothers Inc. For Peter Rosenbruk

CONSIGNED TO
ORDER OF    Peter Rosenbruk % Home Pack Transport, GMBH, Kroegerstrasse 6, 6000
Frankfurt, Main, Germany

| ADDRESS ARRIVAL NOTICE TO (NAME AND ADDRESS) | DELIVERY INSTRUCTIONS OR DESTINATION |
|---|---|
| Same | Same |

| VESSEL | FLAG | PIER | PORT OF LOADING |
|---|---|---|---|
| WE FORWARDER | 1/9/70 | Pier 13, Staten Island | NY |

| PORT OF DISCHARGE (... DELIVERED TO CONSIGNEE OR ON-CARRIER) | FOR TRANSSHIPMENT TO (IF GOODS ARE TO BE TRANSSHIPPED OR FORWARDED AT PORT OF DISCHARGE) |
|---|---|
| Hamburg | DESTINATION |

| PART I - CARRIER'S RECEIPT | | PART II - PARTICULARS FURNISHED BY SHIPPER | | |
|---|---|---|---|---|
| MARKS AND NUMBERS SEAL NUMBERS | NO. OF CONT. OR OTHER PKGS | DESCRIPTION OF GOODS | MEASURE-MENT | GROSS WEIGHT OF CARGO IN POUNDS |
| Peter Rosenbruk % Home Pack Transport GMBH Hamburg, Germany | 1 | 40' CHLU #183333 Cont. Booking #8   used household goods House to House Shippers load & Count | 2205 | 17,200 Net |
| | 1 | 11ft box used household goods | 96 | 1250 |
| | | Ocean Freight Prepaid | | |
| | | These commodities licensed by the U. S. for ultimate destination Germany.  Diversions contrary to U. S. law prohibited. | | |

SHIPPERS LOAD AND COUNT

FREIGHT TO BE PREPAID AT _____

*In connection with freight, see clause 15 and 17 of this bill of lading.*

_____ @ _____ per 100 lbs. $ _____
_____ @ _____ per 2240 lbs. $ _____
___ft. ___ in. @ _____ per 40 cu. ft. $ _____
_____ kgs. @ _____ per 1000 kgs. $ _____
_____ cbm. @ _____ per cbm.    $ _____
_____    $ _____
_____    $ _____

Extra charge for declared
Value of $ _____ per pkg.    $ _____
_____    $ _____

TOTAL ___ $ _____

IN ACCEPTING THIS BILL OF LADING the Shipper, Consignee, Holder hereof, and Owner of the goods agree to be bound by all of its stipulations, exceptions, and conditions, whether written, printed, or stamped on the front or back hereof as well as the provisions of the above Carrier's published Tariff Rules and Regulations as fully as if they were all signed by such Shipper, Consignee, Holder or Owner, and it is further agreed Containers may be stowed on Deck, as per Clause 7.

IN WITNESS WHEREOF, the Master of the said vessel has affirmed to (Number) 3 bills of lading, all of this tenor and date, ONE of which being accomplished, the others to stand void.

AMERICAN EXPORT FREIGHT, INC., Agent
For AMERICAN EXPORT ISBRANDTSEN LINES, INC., Carrier
For The Master

By ...........................................

| BILL OF LADING NUMBER | DATED AT |
|---|---|
| | |

**TERMS OF BILL OF LADING CONTINUED ON REVERSE SIDE**

**A RICAN EXPORT FREIGHT, INC. Age**
For AMERICAN EXPORT ISBRANDTSEN LINES, INC, arrier  **16 BROADWAY, NEW YORK, N. Y. 100**

CABLE ADDRESS: EXPOSHIP

| ORIGINATING CARRIER TO STEAMER | | PLACE OF ORIGIN | CAR NUMBER-REFERENCE |
|---|---|---|---|
| Santini Brothers Inc. Ref. H-68305 | | | Job # J2747 |

FORWARDING AGENT - REFERENCES - FMC NO
Seven Brothers International  FMC#139

EXPO?? C. NO.

If Through Bill, indicate here →
Type word "Through"

**BILL OF LADING**
(THE SCOPE OF THE SEA VOYAGE IS DESCRIBED IN CLAUSE 3 HEREOF)

CONTAINER ????????

SHIPPER (NAME AND ADDRESS)
Santini Brothers Inc. For Peter Rosenbruk

CONSIGNED TO
ORDER OF  Peter Rosenbruk % Home Pack Transport, GMBH, Kroegerstrasse 4, 6000
Frankfurt, Main, Germany

| ADDRESS ARRIVAL NOTICE TO (NAME AND ADDRESS) | DELIVERY INSTRUCTIONS OR DESTINATION |
|---|---|
| Same | Same |

INT. FORWARDER

| | FLAG 1/9/70 | PIER Pier 13, Staten Island | PORT OF LOADING NY |
|---|---|---|---|

PORT OF DISCHARGE (WHERE GOODS ARE TO BE DELIVERED TO CONSIGNEE OR ON-CARRIER)
Hamburg   VIA BREMEN

FOR TRANSSHIPMENT TO
(IF GOODS ARE TO BE TRANSSHIPPED OR FORWARDED AT PORT OF DISCHARGE)
DESTINATION

**PART I - CARRIER'S ????** | **PART II - PARTICULARS FURNISHED BY SHIPPER**

| MARKS AND NUMBERS SEAL NUMBERS | NO. OF CONT. OR OTHER PKGS | DESCRIPTION OF GOODS | MEASURE-MENT | GROSS WEIGHT CARGO IN POU? |
|---|---|---|---|---|
| Peter Rosenbruk % Home Pack Transport GMBH Hamburg, Germany | 1 | 40° CHLU #183333 Cont. Booking #8 used household goods House to House Shippers load & Count | 2205 | 17,000# |
| | 1 | 11ft box used household goods Stow under deck only | 96 | 1250 |
| | | Ocean freight Prepaid | | |
| | | Those commodities licensed by the U. S. for ultimate destination Germany. Diversions contrary to U. S. law prohibited. | | |

**SHIPPERS LOAD AND COUNT**

The undersigned hereby certifies that it is operating under license No. 139 and reduction No. 2597, Federal Marine Commission, or its predecessors and has performed in addition to the solicitation and securing of the cargo for the ship or the booking of, or otherwise arranging for space for, such cargo, two or more of the following services: (Check services performed)

(1) The coordination of the ???? ???? of the ???? to ????.
(2) The preparation and processing of the ocean bill of lading;
(3) The preparation and processing of dock receipts or ?????;
The preparation and processing of con?? documents or export declarations;
in connection with freight rate clause 15 and 17 of this bill of lading.

BROTHERS INTERNATIONAL Inc.

FREIGHT TO BE PREPAID AT

|  | @ | per 100 lbs. | $ |
|---|---|---|---|
|  | @ | per 2240 lbs. | $ |
| ft. in. | @ | per 40 cu. ft. | $ |
| kgs. | @ | per 1000 kgs. | $ |
| cbm. | @ | per cbm. | $ |
|  |  |  | $ |
|  |  |  | $ |

Extra charge for declared
Value of $ _____ per pkg.  $ _____

TOTAL _____ $ _____

REV.-1851:3/70

IN ACCEPTING THIS BILL OF LADING the Shipper, Consignee, Holder hereof, and Owner of the goods agree to be bound by all of its stipulations, exceptions, and conditions, whether written, printed, or stamped on the front or back hereof as well as the provisions of the above Carrier's published Tariff Rules and Regulations as fully as if they were all signed by such Shipper, Consignee, Holder or Owner, and it is further agreed Containers may be stowed on Deck, as per Clause 7.
IN WITNESS WHEREOF, the Master of the said vessel has affirmed to (Number) 3 bills of lading, all of this tenor and date, ONE of which being accomplished, the others to stand void.

**AMERICAN EXPORT FREIGHT, INC.**, Agent
For AMERICAN EXPORT ISBRANDTSEN LINES, INC., Carrier
For The Master

By .............................................

| BILL OF LADING NUMBER | DATED AT |
|---|---|
| 5 | N.Y. 1-8-71 |

**TERMS OF BILL OF LADING CONTINUED ON REVERSE SIDE**

---

**APPENDIX B**

17. In case of any loss or damage to or in connection with goods exceeding in actual value the equivalent of $500 lawful money of the United States, per package, or, in case of goods not shipped in packages, per shipping unit, the value of the goods shall be deemed to be $500

per package or per shipping unit. The Carrier's liability if any, shall be determined on the basis of a value of $500 per package or per shipping unit or pro rata in case of partial loss or damage, unless the nature of the goods and a valuation higher than $500 per package or shipping unit shall have been declared in writing by the Shipper upon delivery to the Carrier and inserted in this bill of lading and extra charge paid. In such case if the actual value of the goods per package or per shipping unit shall exceed such declared value, the value shall nevertheless be deemed to be declared value and the Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value. The words "shipping unit" shall mean each physical unit or piece of cargo not shipped in a package, including articles or things of any description whatsoever, except goods shipped in bulk, and irrespective of the weight or measurement unit employed in calculating freight charges. . . .